TUCKER ELLIS LLP
MOLLIE F. BENEDICT SBN 187084
mollie.benedict@tuckerellis.com
MONEE TAKLA HANNA SBN 259468
monee.hanna@tuckerellis.com
515 South Flower Street, 42nd Floor
Los Angeles, CA 90071-2223
Telephone:  213.430.3400
Facsimile:  213.430.3409

DUSTIN B. RAWLIN, *pro hac vice*
dustin.rawlin@tuckerellis.com
950 Main Street, Suite 1100
Cleveland, OH 44113-7213
Telephone:  216.592.5000
Facsimile:  216.592.5009

Attorneys for Defendant MENTOR WORLDWIDE LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| REXINA MIZE, an individual; MINH NGUYEN, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>MENTOR WORLDWIDE LLC; and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 2:17-cv-01747-DMS-KS<br><br>Hon. Dolly M. Gee<br><br>**DEFENDANT MENTOR WORLDWIDE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Request for Judicial Notice; Declaration of Mollie F. Benedict; and [Proposed] Order]<br><br>**DATE:**      June 16, 2017<br>**TIME:**      9:30 A.M.<br>**Courtroom:** 8C |

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE** that on June 16, 2017, at 9:30 a.m. or as soon thereafter as the matter may be heard in Courtroom 8C of the above-referenced court,

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Denver ◆ Houston ◆ Los Angeles ◆ St. Louis ◆ San Francisco

located at 350 W. 1st Street, Los Angeles, California, 90012, Defendant Mentor Worldwide LLC ("Mentor"), will and does hereby move to dismiss Plaintiffs' Complaint in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is based on the grounds that Plaintiff Rexina Mize's claims are expressly preempted by the Medical Device Amendments to the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 360k because the device at issue in this action, a Mentor MemoryGel Silicone Breast Implant, is a Class III medical device that was evaluated and approved pursuant to the U.S. Food and Drug Administration's Investigational Device Exemption ("IDE") process and, ultimately, the pre-market approval ("PMA") process. To the extent Plaintiff's claims seek to enforce federal regulations governing the device, they are also impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001). Further, Plaintiffs' claims are also inadequately pled and subject to dismissal for independent state law reasons. Because Plaintiff Rexina Mize's claims fail, Plaintiff Minh Nguyen's derivative loss-of-consortium claim fails.

This Motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities in support thereof; the concurrently filed Declaration of Mollie F. Benedict; the concurrently filed Request for Judicial Notice; the pleadings and documents on file in this case and on such other written or oral arguments as may be presented at or before the hearing on this Motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 initiated on May 5, 2017.

DATED: May 16, 2017                    TUCKER ELLIS LLP


By: */s/ Mollie F. Benedict*
     Mollie F. Benedict
     Attorneys for Defendant MENTOR
     WORLDWIDE LLC

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................... 1

II.   FACTUAL BACKGROUND ........................................................... 2

III.  ARGUMENT ....................................................................... 5

    A.    Legal Standard .............................................................. 5

    B.    Federal Law Bars Plaintiff's Claims ........................................ 6

        1.    The MDA Preempts Additional or Different State Law
           Requirements Related to the Safety or Effectiveness of a
           Federally Approved Medical Device ................................... 6

           (a)   Medical Device Amendments of 1976 ................................ 7

           (b)   Medical Device Preemption Under Riegel ........................... 9

           (c)   IDEs  are entitled to Riegel Preemption .......................... 12

           (d)   Implied preemption under Buckman ................................. 13

        2.    The FDA Has Mandated Specific Requirements for the
           Manufacture, Design, and Labeling of Breast Implants ............... 14

        3.    Plaintiff's State Law Claims (Counts 1–4) Conflict with
           the FDA Requirements for the Manufacture, Labeling,
           and Alteration of the Breast Implants and Are
           Preempted ........................................................ 15

        4.    Plaintiff Has Not Pled a Plausible Parallel Claim That
           Survives Express and Implied Preemption. .......................... 18

           (a)   Plaintiff fails to plead a parallel manufacturing defect
               claim ....................................................... 18

           (b)   Plaintiff's alleged regulatory violations do not support a
               parallel claim .............................................. 19

               (i)    Form 483s .................................................... 19

               (ii)   Changes Being Effected ................................ 20

i

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

(iii)    Adverse Event Reporting..............................21

(c)    Plaintiff's failure to warn and negligence per se claims are impliedly preempted. ........................................................21

5.    Plaintiff Has Not Alleged A Causal Nexus Between the Alleged Violations and Her Injuries. .............................22

6.    Numerous Courts Have Held State Law Claims Related to Breast Implants Are Preempted ................................23

C.    Plaintiff Minh Nguyen's Derivative Loss of Consortium Claim Fails....24

IV.    CONCLUSION..................................................................25

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Denver ◆ Houston ◆ Los Angeles ◆ St. Louis ◆ San Francisco

# <u>TABLE OF AUTHORITIES</u>

<div align="right"><u>Page(s)</u></div>

<u>C</u>ASES

*Alfred v. Mentor Corp.*,
No. 05-483, 2007 WL 708631 (W.D. Ky. Mar. 5, 2007)....................................... 24

*Anderson v. Medtronic*,
No. 14-cv-00615-BAS(RBB), 2015 WL 2115342 (S.D. Cal. May 6, 2015)...... 11, 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................... 5, 6

*Blinn v. Smith & Nephew Richards, Inc.*,
55 F. Supp. 2d 1353 (M.D. Fla. 1999)................................................................... 12

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001)........................................................................... 1, 13, 14, 21

*Burgos v. Satiety, Inc.*,
No. 10-CV-2680 JG, 2010 WL 4907764 (E.D.N.Y. Nov. 30, 2010)................. 12, 18

*Chambers v. Osteonics Corp.*,
109 F.3d 1243 (7th Cir. 1997) .............................................................................. 13

*Cipollone v. Liggett Group, Inc.*,
505 U.S. 504 (1992)................................................................................................. 7

*Cline v. Advanced Neuromodulation Sys., Inc.*,
17 F. Supp. 3d 1275 (N.D. Ga. 2014)................................................................ 19, 20

*Cohen v. Guidant Corp*,
No. CV-05-8070-R, 2011 WL 637472 (C.D. Cal. Feb. 15, 2011) ......................... 12

*Cottengim v. Mentor Corp.*,
No. 05-161, 2007 WL 2782885 (E.D. Ky. Sept. 24, 2007)..................................... 24

*Couvillier v. Allergan Inc.*,
No. 10-1383, 2011 WL 8879258 (W.D. La. Jan. 20, 2011).................................... 24

*Covert v. Stryker Corp.*,
No. 1L:08CV447, 2009 WL 2424559 (M.D.N.C. Aug. 5, 2009) ............................ 6

*Dawson v. Howmedica, Inc.*,
886 F. Supp. 1402 (E.D. Tenn. 1995)..................................................................... 13

<div align="left" style="writing-mode: vertical-rl;">T<span style="font-variant: small-caps;">UCKER</span> E<span style="font-variant: small-caps;">LLIS</span> LLP<br>Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco</div>

*De La Paz v. Bayer Healthcare LLC*,
 159 F. Supp. 3d 1085 (N.D. Cal. 2016) ........................................ 17, 19

*Dorsey v. Allergan, Inc.*,
 No. 08-0731, 2009 WL 703290 (M.D. Tenn. Mar. 11, 2009) ................... 24

*Dorsey v. Allergan, Inc.*,
 No. 3:08–0731, 2009 WL 703290 (M.D. Tenn. Mar. 11, 2009) .............. 12

*Dunbar v. Medtronic, Inc.*,
 No. CV 14-01529-RGK(AJWx), 2014 WL 3056026
 (C.D. Cal. June 25, 2014) ................................................. 11, 21

*Dunlap v. Medtronic, Inc.*,
 47 F. Supp. 2d 888 (N.D. Ohio 1999) ........................................ 13

*Erickson v. Boston Sci. Corp.*,
 846 F. Supp. 2d 1085 (C.D. Cal. 2011) ............................. 10, 11, 15

*Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*,
 515 F.3d 1019 (9th Cir. 2008) ............................................... 24

*Ford v. Mentor Worldwide, LLC*,
 No. 2:13-cv-06317 (E.D. La. Dec. 17, 2013) ............................... 23

*Frere v. Medtronic*,
 No. EDCV 15-02338-BRO(DTBx), 2016 WL 1533524 (C.D. Cal. Apr. 6, 2016) . 22,
 23

*Grant v. Corin*,
 No. 3:15-CV-169-CAB-BLM, 2016 WL 4447523 (S.D. Cal. Jan. 16, 2016) ... 10, 12,
 21, 22

*Haddock v. Mentor Texas*,
 No. 03-cv-2311, 2005 WL 3542563 (N.D. Tex. Mar. 25, 2005) ............... 24

*Harris v. Mentor Worldwide LLC*,
 No. 12-cv-916 (E.D. Cal. Aug. 21, 2012) ................................... 24

*Hawkins v. Medtronic, Inc.*,
 No. 1:13-CV-499 AWI SKO, 2014 WL 346622 (E.D. Cal. Jan. 30, 2014) ........ 14

*Herbert v. Mentor*,
 No. 04-413, 2007 WL 2893387 (D.N.J. Sept. 28, 2007) ...................... 24

*Horn v. Thoratec Corp.*,
 376 F.3d 163 (3d Cir. 2004) ................................................. 17

*Houston v. Medtronic*,
 957 F. Supp. 2d 1166 (C.D. Cal. 2013) ...................................... 16

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

*In re Gilead Scis. Secs. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ............................................................................ 6

*In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig. ("Medtronic Leads")*,
   592 F. Supp. 2d 1147 (D. Minn. Jan. 5, 2009) .................................... 11, 19

*In re Medtronic, Inc., Sprint Fidelis Prods. Liab. Litig.*,
   623 F.3d 1200 (8th Cir. 2010) .......................................................................... 13

*Jager v. Davol Inc.*,
   No. EDCV 16–1424 JGB (KKx), 2017 WL 696081 (C.D. Cal. Feb. 9, 2017)........ 25

*Kashani-Matts v. Medtronic*,
   No. SACV 13-01161, 2013 WL 6147032 (C.D. Cal. Nov. 22, 2013) .............. 11, 14

*Malonzo v. Mentor Worldwide, LLC*,
   No. C 14-01144, 2014 WL 2212235 (N.D. Cal. May 28, 2014)............................ 23

*Martin v. Telectronics Pacing Sys., Inc.*,
   105 F.3d 1090 (6th Cir. 1997) ................................................................ 3, 4, 13

*McGuan v. Endovascular Technologies, Inc.*,
   182 Cal. App. 4th 974 (Cal. App. Ct. 2010) ................................................... 12

*McPhee v. DePuy Orthopedics, Inc.*,
   No 3:11-287, 2013 WL 5462762 (W.D. Pa. Sept. 30, 2013) ............................ 19

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996)......................................................................................... 7, 10

*Millman v. Medtronic*,
   No. 14-cv-1465, 2015 WL 778779 (D.N.J. Feb. 24, 2015)............................... 23

*Motus v. Pfizer Inc.*,
   358 F.3d 659 (9th Cir. 2004) ............................................................................ 16

*Nimtz v. Cepin*,
   No. 08cv1294, 2011 WL 831182 (S.D. Cal. Mar. 3, 2011) ......................... 11, 12

*Norton v. Indep. Tech.*,
   No. 2:10-CV-03218-MCE, 2011 WL 3584491 (E.D. Cal. Aug. 15, 2011) .............. 11

*Norton v. Independence Technology* ,
   No. 2:10-CV-03218-MCE, 2011 WL 3584491 (E.D. Cal. Aug. 15, 2011) ............... 6

*Parks v. Howmedica Osteonics Corp.*,
   No. 8:15-CV-0075-MSS-MAP, 2016 WL 7220707 (M.D. Fla. Mar. 11, 2016) ...... 12

*Pearsall v. Medtronics, Inc.*,
   147 F. Supp. 3d 188 (E.D.N.Y. 2015) ............................................................. 18

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

*Perez v. Nidek Co., Ltd.*,
   711 F.3d 1109 (9th Cir. 2013) ............................................................ 13, 14, 18

*Rhynes v. Stryker Corp.*,
   No 10-5619, 2011 WL 5117168 (N.D. Cal. Oct. 27, 2011) ............................ 10, 11

*Riegel v. Medtronic, Inc.*,
   552 U.S. 312, 128 S.Ct. 999 (2008) ...................................................... passim

*Robinson v. Endovascular Tech.*,
   119 Cal. Rptr. 3d 158 (Cal. Ct. App. 2010) .................................................. 12

*Shaw v. Hahn*,
   56 F.3d 1281 (9th Cir. 1995) ....................................................................... 6

*Shwarz v. United States*,
   234 F.3d 428 (9th Cir. 2000) ....................................................................... 6

*Simmons v. Boston Scientific Corp.*,
   No. CV 12-7962, 2013 WL 1207421 (C.D. Cal. Mar. 25, 2013) ..................... 11, 18

*Slater v. Optical Radiation Corp.*,
   961 F.2d 1330 (7th Cir. 1992) .................................................................... 13

*Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc.*,
   922 F. Supp. 299 (C.D. Cal. 1996) ............................................................. 22

*Walker v. Medtronic, Inc.*,
   670 F.3d 569 (4th Cir. 2011) ..................................................................... 10

*Weaver v. Ethicon*,
   No. 16cv257–GPC (BGS), 2016 WL 7098781 (S.D. Cal. Dec. 6, 2016) ............. 21

*Williams v. Allergan USA, Inc.*,
   No. CV-09-1160, 2009 WL 3294873 (D. Ariz. Oct. 14, 2009) .......................... 24

*Wolicki-Gables v. Arrow Intern., Inc.*,
   634 F.3d 1296 (11th Cir. 2011) ................................................................. 22

## STATUTES

21 C.F.R. § 801.109 ......................................................................................... 4

21 C.F.R. § 812.20 ........................................................................................... 3

21 C.F.R. § 812.25 ........................................................................................... 3

21 C.F.R. § 812.27 ........................................................................................... 4

21 C.F.R. § 812.30 ........................................................................................... 4

21 C.F.R. § 814.82 ........................................................................................... 5

21 C.F.R. § 878.3530 ....................................................................................... 2

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

21 U.S.C. § 337(a) ........................................................................... 13, 14

21 U.S.C. § 360c(a)(1) ........................................................................... 7

21 U.S.C. § 360c(a)(1)(C)(ii) ................................................................ 7

21 U.S.C. § 360c(a)(2)(C) ...................................................................... 8

21 U.S.C. § 360e(d) ............................................................................... 8

21 U.S.C. § 360e(d)(1)(A) ..................................................................... 8

21 U.S.C. § 360j(g) ................................................................................ 3

21 U.S.C. § 360k(a) ........................................................................... 9, 15

## OTHER AUTHORITIES

U.S. Const., art. VI, cl. 2 ...................................................................... 6

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

This is a product liability action concerning Mentor's MemoryGel Silicone Breast Implants, which are "Class III" medical devices approved by the U.S. Food and Drug Administration ("FDA"), initially through the Investigational Device Exemption ("IDE") process, and later through the premarket approval process ("PMA") after the device's design, manufacture, and labeling was approved by the FDA. Plaintiff Rexina Mize ("Plaintiff") asserts four claims against Mentor Worldwide LLC ("Mentor") based on the manufacture and labeling of Mentor's MemoryGel Silicone Breast Implants, which were implanted pursuant to an IDE.  Plaintiff's spouse, Minh Nguyen, asserts a loss-of-consortium claim.  The Court should dismiss Plaintiffs' claims against Mentor under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.

*First*, the U.S. Supreme Court's decision in *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008), requires dismissal of Plaintiff Rexina Mize's ("Plaintiff") state-law claims (Counts 1–4). The Supreme Court in *Riegel* held that federal law bars individual state law personal injury claims challenging the safety and effectiveness of certain medical devices. Courts in California and across the country have determined that *Riegel* controls in cases involving medical devices with IDE approval. Plaintiff's claims would impose manufacturing or labeling requirements different from, or in addition to, those approved by the FDA through the IDE process and therefore are preempted by the Medical Device Amendments ("MDA"), 21 U.S.C. §§ 360 *et seq*., to the Federal Food, Drug and Cosmetic Act ("FDCA").

*Second*, to the extent Plaintiff's claims seek to enforce federal regulations governing the device, they are also impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001)  Plaintiff's attempt to circumvent express and implied preemption fails because there is no private right of action under the FDCA

or the California FDCA. Plaintiff thus has not alleged a viable state-law "parallel" claim that survives express and implied preemption.

*Third*, Plaintiff Minh Ngyuen's loss-of-consortium claim (Count 5) fails on the ground that his claim is derivative of Plaintiff Rexina Mize's claims.

## II.   FACTUAL BACKGROUND

Plaintiff Rexina Mize was surgically implanted with Mentor MemoryGel Silicone Breast Implants in September 2000 as part of Mentor's Core Study. *See* FAC ¶¶ 135–136. Plaintiff alleges that following her surgery, she experienced various injuries including chronic fatigue, muscle pain, joint pain, memory loss, and autoimmune issues. *Id*. ¶ 138. On January 3, 2017, she underwent explant surgery to remove her breast implants. *Id*. ¶ 141. Plaintiff filed her First Amended Complaint ("FAC") on April 25, 2017[1] asserting causes of action for: (1) negligence and negligence per se; (2) strict products liability – failure to warn; (3) strict products liability – manufacturing defect; (4) and implied warranty. Plaintiff's spouse, Minh Ngyuen, asserts a loss-of-consortium claim (Count 5). Plaintiff's factual allegations, and the basis for her damages, relate solely to the device's safety and effectiveness.

The Mentor MemoryGel Silicone Breast Implants implanted in Plaintiff are Class III medical devices as defined by 21 C.F.R. § 878.3530 and as such are subject to the most stringent controls under the MDA. *See Riegel*, 552 U.S. at 316. In January 1992, the FDA announced a voluntary moratorium on the commercial distribution of silicone gel breast implants. *See* FAC ¶ 8. On April 16, 1992, the FDA lifted the moratorium, but announced that silicone gel-filled implants would only be allowed in certain controlled clinical studies and for certain patients who met qualification criteria. In July

---

[1] Plaintiffs filed their original complaint in Los Angeles Superior Court on February 2, 2017. Following removal, Defendants Mentor, Ethicon, Inc., and Johnson & Johnson filed a Motion to Dismiss on April 2, 2017. In lieu of responding, Plaintiffs filed a First Amended Complaint on April 25, 2017 removing as defendants Ethicon, Inc. and Johnson & Johnson.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

of 1992, the FDA approved Mentor's stage 2 adjunct study protocol to sell implants to qualified candidates for reconstruction and revision. *See Id.* at p. 11.

In August 2000, the FDA approved Mentor's IDE study (i.e., Core Study) for its silicone gel-filled breast implants for a limited number of augmentation, reconstruction, and revision patients. *See Id.*[2] Plaintiff's FAC acknowledges that at the time the Mentor Silicone Breast Implants were implanted in Plaintiff for augmentation in September 2000, they could *only* be implanted pursuant to the IDE Core Study. *See Id.* at ¶ 9.

The IDE was designed "to encourage, to the extent consistent with the protection of public health and safety and with ethical standards, the discovery and development of useful devices intended for human use." 21 U.S.C. § 360j(g). Investigational devices are subject to a "set of complex and comprehensive regulations which set forth detailed procedures for determining whether investigational devices are safe and effective." *Martin v. Telectronics Pacing Sys., Inc.*, 105 F.3d 1090, 1095 (6th Cir. 1997). To qualify for the investigational device exemption, the manufacturer must first submit a detailed application to the FDA. In this application, the manufacturer must set forth a "complete report of prior investigations of the device" and a "description of the methods, facilities, and controls used for the manufacture, processing, packing, storage, and where appropriate, installation of the device, in sufficient detail so that a person generally familiar with good manufacturing practices can make a knowledgeable judgment about the quality control used in the manufacture of the device." 21 C.F.R. § 812.20.

Additionally, pursuant to 21 C.F.R. § 812.25, the manufacturer must submit a detailed statement regarding the intended use of the device and the objectives and duration of the investigation; a written protocol describing the methodology to be used and an analysis of the protocol demonstrating that the investigation is scientifically

---

[2] *See also* https://www.fda.gov/MedicalDevices/ProductsandMedicalProcedures/ ImplantsandProsthetics/BreastImplants/ucm064461.htm.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

sound; an analysis of all the increased risks to which subjects will be exposed by the investigation and how those risks will be minimized; a description of each component, ingredient, property, and principle of operation of the device; the procedures for monitoring the investigation; and copies of all labeling for the device. *Martin,* 105 F.3d at 1096 (citing 21 C.F.R. § 812.25). Finally, under 21 C.F.R. § 812.27, the manufacturer must submit a report of prior investigations, including a bibliography of every publication relevant to the evaluation of the safety and effectiveness of the device and information from non-clinical testing.

Upon receipt of the IDE application, the FDA will determine whether to grant the investigational device exemption. The FDA will approve the device under the IDE unless "the risks to the subjects are not outweighed by the anticipated benefits to the subjects and the importance of the knowledge to be gained, or informed consent is inadequate, or the investigation is scientifically unsound, or there is reason to believe that the device as used is ineffective." 21 C.F.R. § 812.30.

On December 12, 2003, Mentor submitted a PMA application for its MemoryGel Silicone Breast Implants. *See* PMA Approval Order and Summary of Safety and Effectiveness for P030053, dated November 17, 2006 (attached as Exhibit 1 to Mentor's Request for Judicial Notice ("RJN")). On November 17, 2006, the FDA found that the Mentor MemoryGel Silicone Breast Implants as designed, manufactured and labeled are safe and effective, and the FDA issued an Approval Order. *Id.*; *see also* 72 Fed. Reg. 15,885, 15,886 (April 3, 2007) Notices, TABLE 1: List of Safety and Effectiveness Summaries for Approved PMAs Made Available from October 1, 2006 to December 31, 2006 (attached as Exhibit 2 to Mentor's RJN). Thereafter, Mentor MemoryGel Silicone Breast Implants could only be sold to healthcare professionals in accordance with the design, manufacturing, and labeling specifications approved by the FDA. *Id.*; *see also* 21 C.F.R. § 801.109.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

The Approval Order also outlined six post-approval studies which Mentor agreed to conduct as a condition of approval.[3]   Contrary to Plaintiff's allegation that Mentor "fail[ed] to provide follow-through studies to the FDA" (FAC ¶ 199), the FDA "[c]losely monitors the status and conduct of the on-going required post-approval studies so that data is collected, validated scientifically and disseminated widely." *See* FDA Update on the Safety of Silicone Gel-Filled Breast Implants, Executive Summary, attached as Exhibit 3 to RJN. The FDA also recognized that "[e]ach study had some patients who were not available for follow-up because they had died or discontinued participation." *Id*. at 9.   Moreover, the FDA is empowered to withdraw premarket approval for a manufacturer's failure to comply with any post-approval requirements. *See* 21 C.F.R. § 814.82.   The approvals for Mentor's MemoryGel Silicone Breast Implants, however, remain in effect and have never been suspended or withdrawn.

## III.   ARGUMENT

### A.   Legal Standard

Dismissal is warranted under Rule 12(b)(6) when a plaintiff fails to allege facts sufficient "to raise a right to relief above the speculative level" or fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007).   This "plausibility" standard applies to all claims brought in federal court. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).   A claim is plausible only if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.   Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).   While a court generally must accept well-pleaded facts as true, this

---

[3] Each manufacturer of silicone gel-filled breast implants was required to complete the following post-approval studies as a condition of approval: (1) Core Post-Approval Study; (2) Large Post-Approval Study; (3) Device Failure Study; (4) focus group studies; (5) annual physician informed decision survey;  and (6) adjunct study.

principle does *not* apply to legal conclusions, conclusory allegations, or unwarranted factual inferences.  *See id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 ("[P]laintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citing FED. R. CIV. P. 8(a)); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (explaining that court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable interferences").

A court also need not accept as true allegations contradicted by judicially noticeable facts. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Reference to public FDA records that are entitled to judicial notice does not necessitate conversion of a motion for judgment on the pleadings to one for summary judgment.  *See Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995) (noting that a "court may look beyond the plaintiff's complaint to matters of public records" without converting the Rule 12(b)(6) motion into one for summary judgment) (citations omitted). *see also Covert v. Stryker Corp.*, No. 1:08CV447, 2009 WL 2424559, at *1 n.2 (M.D.N.C. Aug. 5, 2009) ("[T]he Court may take judicial notice of and consider the public records of the FDA…without transforming this motion [] into a motion for summary judgment.") (citations omitted); *Norton v. Independence Tech.*, No. 2:10-CV-03218-MCE, 2011 WL 3584491, at *1, n.1 (E.D. Cal. Aug. 15, 2011) (taking judicial notice of FDA documents as matters of public record, which does not convert the motion into one for summary judgment).

## B.    Federal Law Bars Plaintiff's Claims

### 1.    The MDA Preempts Additional or Different State Law Requirements Related to the Safety or Effectiveness of a Federally Approved Medical Device

The Supremacy Clause of the United States Constitution states that the "Laws of the United States . . . shall be the supreme Law of the Land."  U.S. Const., art. VI, cl. 2.

Because federal law is supreme, any "state law that conflicts with federal law is 'without effect.'" *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992).

(a)     Medical Device Amendments of 1976

Congress gave the FDA exclusive regulatory authority over medical devices when it amended the Food, Drug and Cosmetic Act by enacting the Medical Device Amendments of 1976 ("MDA").  21 U.S.C. §§ 301 *et seq*.  By establishing a regulatory regime for the oversight of medical devices, the amendments were expected "to provide for the safety and effectiveness of medical devices intended for human use." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 474 (1996)  (citing the preamble to the MDA, 90 Stat. 539) (internal quotations omitted).

The MDA establishes three classes of medical devices based on the level of oversight required to ensure their safety. *Riegel*, 552 U.S. at 316; 21 U.S.C. § 360c(a)(1).  Of the three classes, a Class III device receives the most federal oversight, and requires premarket approval by the FDA.  *Id*.  Generally, a device receives a Class III assignment if it cannot be established that a less stringent classification would "provide reasonable assurance of safety and effectiveness, and the device is 'purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health,' or 'presents a potential unreasonable risk of illness or injury.'" *Id.* (quoting 21 U.S.C. § 360c(a)(1)(C)(ii)).  Premarket approval of a Class III device is a "rigorous process" requiring an applicant to submit "full reports of all studies and investigations relating to the device's safety or effectiveness; a 'full statement of the components, ingredients, and properties . . .'; a full description of the manufacturing methods and the facilities and controls used for the device's manufacturing; [and] examples of the proposed labeling." *Id.* at 317–18.

The FDA spends an "average of 1,200 hours" on each premarket approval application.  *Id.* (quoting *Lohr*, 518 U.S. at 477).  In determining whether to grant premarket approval of a Class III device, the FDA must, among other things, "weigh[]

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

any probable benefit to health from the use of [a] device against any probable risk of injury or illness from such use." 21 U.S.C. § 360c(a)(2)(C).  The FDA will also "rely on the conditions of use included in the proposed labeling as the basis for determining whether or not there is a reasonable assurance of [the device's] safety and effectiveness."  21 U.S.C. § 360e(d)(1)(A).   The FDA may condition its grant of premarket approval upon certain requirements. 21 U.S.C. §§ 360e(d), 360j(e)(1).  Once premarket approval has been granted, "the MDA forbids the manufacturer to make, without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness."  *Riegel*, 552 U.S. at 319 (citing 21 U.S.C. § 360e(d)(6)(A)(i)). Moreover, approved devices are also subject to ongoing reporting requirements related to the device's health and safety.  *Id.* A manufacturer must inform the FDA of studies and investigations of its devices, as well as incidents where the device caused or could have caused serious injury and the FDA retains the authority to withdraw approval based on this information.  *Id.*

Before a device obtains premarket approval, however, the FDA may authorize use of the device pursuant to an IDE.  *See* 21 U.S.C. § 360j(g).  As outlined above, to obtain an IDE, device manufacturer must submit an application that conforms to a long list of requirements. *See, e.g.*, 21 U.S.C. § 360j(g)(3)(A); 21 C.F.R. § 812.20. The FDA reviews this information and "may approve an investigation as proposed, approve it with modifications, or disapprove it." 21 C.F.R. § 812.30(a). Like the premarket approval process, even after a device is approved through the IDE process, the FDA may withdraw its approval at any time, including if it finds it is unreasonable to continue the investigation due to the "inadequacy of[] [t]he methods, facilities, and controls used for the manufacturing, processing, packaging, storage, and, where appropriate, installation of the device." 21 C.F.R. § 812.30(b)(5)(ii).

Importantly, to ensure FDA oversight is not controverted by state regulatory measures, the MDA contains an express preemption provision which states that: "[N]o State or political subdivision of a State may establish or continue in effect with respect

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

to a device intended for human use any requirement—[¶] (1) which is different from, or in addition to, any requirement applicable under this Act to the device, and [¶] (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter." 21 U.S.C. § 360k(a).

### (b)   Medical Device Preemption Under *Riegel*

In *Riegel*, the United States Supreme Court considered whether the MDA's preemption provision barred common law claims that challenged the safety and effectiveness of Class III medical devices which received approval through the PMA process. 552 U.S. at 320. At issue was a premarket approved Class II catheter marketed by Medtronic. *Id*. The plaintiffs alleged the catheter was "designed, labeled, and manufactured in a manner that violated" state common law, and that these defects caused severe injuries and asserted claims for "strict liability; breach of implied warranty; and negligence in the design, testing, inspection, distribution, labeling, marketing, and sale of the catheter." *Id*.

The *Riegel* court unequivocally construed the MDA's express preemption provision to preempt the plaintiffs' state law claims against the PMA-approved catheter. In so doing, the court established a two-step inquiry for determining whether state law claims are preempted by the MDA. First, the court "must determine whether the Federal Government has established requirements applicable to" the medical device at issue. *Id*. at 321. Second, if there are applicable federal requirements, the court must then determine whether the "common-law claims are based upon [state] requirements with respect to the device that are 'different from, or in addition to' the federal ones, and that relate to safety and effectiveness." *Id*. at 322.

As to the first part of the inquiry, *Riegel* held that the FDA's premarket approval imposes federal requirements because it is granted "only after [the FDA] determines that a device offers a reasonable assurance of safety and effectiveness" and because "the FDA requires a device that has received premarket approval to be made with almost no deviations from the specifications in its approval application." *Id*. at 323. In reaching

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

9

this conclusion, the *Riegel* court expressly distinguished its prior holding in *Lohr*, 518 U.S. at 470, where the court had held that substantial-equivalence review pursuant to 21 U.S.C. § 510(k) did not impose a device-specific federal "requirement." *Riegel*, 552 U.S. at 322. Given that substantial-equivalence review enables medical devices to be "marketed only so long as they remain substantial equivalents of the relevant pre-1976 devices," the court regarded the process as an exemption rather than a requirement. *Id.*; *Lohr*, at 493–94.

*Riegel* is consistent with federal authority construing the PMA process to impose a federal requirement for the purpose of preemption. *See Erickson v. Boston Sci. Corp.*, 846 F. Supp. 2d 1085, 1091 (C.D. Cal. 2011) (recognizing that there is "no dispute" that federal requirements apply to the device at issue approved through the PMA process); *Walker v. Medtronic, Inc.*, 670 F.3d 569, 577 (4th Cir. 2011) ("[B]ecause [] Class III devices are required to undergo the premarket approval process, federal requirements exists with respect to [] Class III devices.").

As to the second part of the preemption inquiry, *Riegel* found that common law tort duties impose "'requirement[s]' and would be pre-empted by federal requirements specific to a medical device." *Riegel*, 552 U.S. at 323–24. The Court reasoned that common law liability implies that the defendant had a legal duty and that "a liability award can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Id.* at 324. Rejecting the notion that a state-law "requirement" was limited to a state statute or regulation, the *Riegel* court reasoned that "[s]tate tort law that requires a manufacturer's [device] to be safer, but hence less effective, than the model the FDA has approved disrupts the federal scheme no less than state regulatory law to the same effect." *Grant v. Corin*, No. 3:15–CV–169–CAB–BLM, 2016 WL 4447523, at *3 (S.D. Cal. Jan. 16, 2016) (concluding "California 'requirements' include common law duties" in action involving IDE-approved product); *Rhynes v. Stryker Corp.*, No. 10–5619 SC, 2011 WL 5117168, at *4 (N.D. Cal. Oct. 27, 2011) (quoting *Riegel*, 522 U.S. at 325); *see also Nimtz v. Cepin*, No. 08cv1294 L(AJB), 2011 WL

831182, at *4 (S.D. Cal. Mar. 3, 2011) ("[S]tates are not permitted to indirectly regulate the safety and effectiveness of an FDA approved medical device through the tort system.").

In *Riegel*, the U.S. Supreme Court concluded that both elements of its two–step inquiry were satisfied.  Approval of a Class III medical device through the PMA process necessarily established "federal requirements." *Riegel*, 552 U.S. at 321–23. Further, "reference to a State's 'requirements' includes its common-law duties." *Id*. at 324.  Plaintiffs' state tort law claims against the PMA-approved catheter were thus held to be preempted by the express preemption provision of the MDA.  *Id*.

Following *Riegel*, "courts across the country have applied Section 360k(a) broadly, preempting all manner of claims from strict products liability and negligence . . . to breach of warranty . . . to failure to warn and manufacturing-and-design-defect claims. . . to negligence per se." *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig. ("Medtronic Leads")*, 592 F. Supp. 2d 1147, 1152 (D. Minn. 2009) (collecting cases).  Likewise, California courts and the Ninth Circuit routinely apply § 360k(a) to dismiss cases against PMA-approved Class III medical devices based on preemption. *See Dunbar v. Medtronic, Inc.*, No. CV 14-01529-RGK(AJWx), 2014 WL 3056026 (C.D. Cal. June 25, 2014) (dismissing strict liability and design defect claims as expressly preempted).[4]

---

[4] *See also Anderson v. Medtronic*, No. 14–cv–00615–BAS(RBB), 2015 WL 2115342 (S.D. Cal. May 6, 2015) (dismissing strict liability, negligence, and negligence per se claims as expressly preempted); *Kashani-Matts v. Medtronic*, No. SACV 13–01161–CJC(RNBx), 2013 WL 6147032 (C.D. Cal. Nov. 22, 2013) (granting motion to dismiss all plaintiff's claims as preempted); *Simmons v. Boston Sci. Corp.*, No. CV 12–7962 PA (FFMx), 2013 WL 1207421 (C.D. Cal. Mar. 25, 2013) (dismissing strict liability manufacturing, design and failure to warn claims dismissed as preempted); *Erickson*, 2011 WL 7036060 (granting judgment on the pleadings against all claims involving several pacemakers approved through PMA and PMA-equivalent processes); *Rhynes*, 2011 WL 5117168 (granting motion to dismiss as to all claims involving hip implant based on preemption); *Norton v. Indep. Tech., LLC*, No. 2:10–cv–03218–MCE–JFM, 2011 WL 3584491 (granting motion for judgment on the pleadings on preemption

11

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

(c)    IDEs are entitled to *Riegel* Preemption

Like premarket-approved devices, courts in California and across the country also apply § 360k(a) to dismiss cases against IDE-approved devices based on preemption.  In California, "*Riegel* is controlling in cases involving medical devices that have received IDE approval." *Robinson v. Endovascular Tech.*, 119 Cal. Rptr. 3d 158, 165 (Cal. Ct. App. 2010). Numerous other courts have also concluded the MDA's express preemption provision applies equally to IDE devices because they are subject to a level of FDA oversight and control that is at least equivalent to PMA devices. *See, e.g.*, *Burgos v. Satiety, Inc.*, No. 10-CV-2680 JG, 2010 WL 4907764, at *2 (E.D.N.Y. Nov. 30, 2010)  ("Because IDE devices are subject to a level of FDA oversight and control that is, for the purpose of a preemption analysis, identical to that governing PMA devices, the body of preemption law governing PMA devices applies equally to [] IDE device[s] [.]"); *Robinson*, 119 Cal. Rptr. 3d 158 (affirming summary judgment and dismissing all state law claims against an IDE product as preempted); *Grant*, 2016 WL 4447523, at *3 (S.D. Cal. Jan. 16, 2016) (dismissing Sherman Law and negligence per se causes of action involving IDE-approved product); *Parks v. Howmedica Osteonics Corp.*,  No. 8:15-CV-0075-MSS-MAP, 2016 WL 7220707, at *9 (M.D. Fla. Mar. 11, 2016) (finding the IDE process satisfied the first prong of the preemption analysis).[5]

---

grounds against all claims in case involving PMA motorized stair-climbing wheelchair); *Nimtz*, 2011 WL 831182 (granting motion to dismiss on preemption grounds against all claims involving pacemaker approved via PMA); *Cohen v. Guidant Corp.*, No. CV–05–8070–R, 2011 WL 637472 (C.D. Cal. Feb. 15, 2011) (granting motion to dismiss on preemption grounds for pacemaker approved through PMA-equivalent process); *McGuan v. Endovascular Techs., Inc.*, 182 Cal. App. 4th 974 (2010) (holding MDA preempted strict product liability, negligence, breach of express and implied warranties, and consumer protection claims).

[5] *See also Dorsey v. Allergan, Inc.,* No. 3:08–0731, 2009 WL 703290 (M.D. Tenn. Mar. 11, 2009)  (state products liability claims with respect to IDE devices are preempted, regardless of whether the IDE device was used in the core study or adjunct study); *Blinn v. Smith & Nephew Richards, Inc.,* 55 F. Supp. 2d 1353, 1359 (M.D. Fla. 1999)  (plaintiff's claim for failure to warn was preempted because the device was

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

(d)   Implied preemption under *Buckman*

*Riegel* established that a state claim may *only* proceed if it "provid[es] a damages remedy for claims premised on a violation of FDA regulations" if "the state duties in such a case parallel, rather than add to, federal requirements." *Riegel*, 552 U.S. at 330 (internal citations and quotations omitted). However, claims premised *solely* on a violation of MDA requirements are impliedly preempted under *Buckman*. 531 U.S. at 352–53. A "parallel" state claim must "[rely] on traditional state tort law which has predated the federal enactments in question." *Id.* at 353. There is thus a "'narrow gap' through which a state-law claim must fit to escape preemption by the FDCA: 'The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*).'" *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (quoting *In re Medtronic, Inc., Sprint Fidelis Prods. Liab. Litig.,* 623 F.3d 1200, 1204 (8th Cir. 2010)) (emphasis in both).

The FDA holds the exclusive authority to enforce the regulations and levy penalties if it finds that a manufacturer has committed a violation; indeed, "[A]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." 21 U.S.C. § 337(a). As such, a private litigant

---

approved under the IDE); *Dunlap v. Medtronic, Inc.*, 47 F. Supp. 2d 888, 897 (N.D. Ohio 1999) (applying the same analysis for regulations under an IDE to those under the PMA process and concluding that a state claim for breach of implied warranty is preempted); *Martin*, 105 F.3d 1090 (manufacturing defect, design defect, inadequate warning, and supplier liability claims involving IDE product preempted); *Slater v. Optical Radiation Corp.*, 961 F.2d 1330 (7th Cir. 1992) (negligence, strict liability, and breach of implied warranty claims preempted involving IDE device); *Chambers v. Osteonics Corp.*, 109 F.3d 1243 (7th Cir. 1997) (strict liability and breach of warranty claims preempted); *accord Dawson v. Howmedica, Inc.*, 886 F. Supp. 1402, 1407 (E.D. Tenn. 1995) ("All of the courts of appeal that have published opinions involving investigational medical devices have found preemption in this context.").

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

cannot sue a defendant for allegedly violating the FDCA. *See Buckman*, 531 U.S. at 349 n.4 ("The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the medical device provisions . . . ."); *see also Perez*, 711 F.3d at 1119 (finding plaintiffs fraud claim preempted because it "exist[s] solely by virtue of the FDCA . . . requirements") (citations omitted).  "Claims not tied to state law tort duties are essentially private actions to enforce the FDCA and are barred by [21 U.S.C. § 337(a)]." *Hawkins v. Medtronic, Inc.*, No. 1:13–CV–00499 AWI SKO, 2014 WL 346622, at *4 (E.D. Cal. Jan. 30, 2014).  Moreover, claims may be subject to implied preemption if they "seek to enforce an exclusively federal requirement not grounded in traditional state tort law." *Kashani-Matts*, 2014 WL 819392, at *2 (citing *Buckman*, 531 U.S. at 352–53).

### 2.   The FDA Has Mandated Specific Requirements for the Manufacture, Design, and Labeling of Breast Implants

The first step of the preemption inquiry is the determination as to "whether the Federal Government has established requirements applicable to" the medical device at issue—*i.e.*, to Mentor MemoryGel Silicone Breast Implants.  *Riegel*, 552 U.S. at 321. The Mentor MemoryGel Silicone Breast Implants at issue in this case is a Class III device approved by the FDA through the IDE process and which later received PMA approval. The Mentor MemoryGel Silicone Breast Implants at issue were manufactured and marketed pursuant to a valid IDE, and such approval was not revoked, suspended, or withdrawn.[6]

Therefore, any state-law products liability claims attempting to impose design, manufacture, or labeling requirements different from, or in addition to, those approved

---

[6] *See Riegel*, 552 U.S. at 319–20 ("The FDA has the power to withdraw premarket approval based on newly reported data or existing information and must withdraw approval if it determines that a device is unsafe or ineffective under the conditions in its labeling.").

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

as safe and effective by the FDA are preempted by the MDA, 21 U.S.C. §§ 360 *et seq*., to the FDCA, 21 U.S.C. §§ 301 *et seq*.

### 3. Plaintiff's State Law Claims (Counts 1–4) Conflict with the FDA Requirements for the Manufacture, Labeling, and Alteration of the Breast Implants and Are Preempted

The second step of the preemption inquiry is the determination of whether Plaintiff's state law claims rely on any requirement of California law applicable to Mentor MemoryGel Silicone Breast Implants "that is 'different from, or in addition to' federal requirements and that 'relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device.'"  *Riegel*, 552 U.S. at 323 (quoting 21 U.S.C. § 360k(a)).  The MDA expressly preempts any state law claim that would impose different or additional duties relating to any requirement imposed through the PMA process.  *Id*. at 327–28; *Erickson*, 2011 WL 7036060, at *4. Like the plaintiffs in *Riegel*, by alleging state law tort claims, Plaintiff is, in effect, attempting to impose manufacturing and warning requirements upon the Mentor MemoryGel Silicone Breast Implant which conflict with, or add a greater burden to, the specific federal requirements imposed by the FDA through premarket approval.

Plaintiff's threadbare and conclusory claims against Mentor for negligence and negligence per se (Count 1), strict liability failure to warn (Count 2), strict liability manufacturing defect (Count 3), and breach of implied warranty (Count 4) challenge the safety and effectiveness of the IDE-, and later, PMA-approved Mentor MemoryGel Silicone Breast Implants. *See* FAC ¶¶ 144–255.  Indeed, Plaintiff's state law tort claims are not only conclusory, but also irrelevant, as they focus solely on allegations pertaining to premarket approval of Mentor's MemoryGel Silicone Breast Implants, which occurred **six** years after Plaintiff's implant of an IDE-approved device. Nowhere in the FAC does Plaintiff allege that Mentor violated any IDE requirements specific to her device. Thus, her claims are not only preempted, but also implausible and fail to

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

allege facts sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547.

The first cause of action, which asserts negligence and negligence per se is preempted under *Riegel*. Plaintiff asserts that Mentor breached its duty by failing to "warn Plaintiffs and their physicians by not reporting the risk of serious defects . . . the Defendants knew or should have known. . . ." FAC ¶ 148. Plaintiff does not allege that the labeling of her Breast Implants deviated from the FDA-approved labeling. She nonetheless impermissibly seeks to impose labeling requirements that go beyond what federal law requires. *See Riegel*, 552 U.S. at 327–28.

The second cause of action, which asserts strict liability failure to warn, is also preempted under *Riegel*. In support of her claim, Plaintiff makes the conclusory allegation that the MemoryGel Silicone Breast Implants were "defective and unreasonably dangerous . . . in that they contained warnings insufficient to alert consumers, including Plaintiff, of the dangerous risks and complications associated with the [product] . . . ."[7] FAC ¶ 197. Again, Plaintiff does not allege that the labeling of her MemoryGel Silicone Breast Implant deviated from the FDA-approved labeling but nonetheless seeks to impose labeling requirements that go beyond federal law. *See Riegel*, 552 U.S. at 327–28; *Houston v. Medtronic*, 957 F. Supp. 2d 1166, 1177 (C.D. Cal. 2013) ("Plaintiff aims to foist upon Defendants labeling or warning requirements 'in addition to' what federal law requires. Therefore, the claim is expressly preempted.").

In the third cause of action for strict liability manufacturing defect, Plaintiff maintains that her implants "were defective in their manufacturing due to not meeting the current good manufacturing practices required by the FDA..." FAC ¶ 232. Plaintiff

---

[7] Plaintiff *cannot* premise her claim on a failure to warn her directly about that purported risk. *See* FAC ¶ 195. Under the learned intermediary doctrine, a medical device manufacturer's duty is to warn the prescribing physician, *not* the patient. *See, e.g.*, *Motus v. Pfizer Inc.*, 358 F.3d 659, 661 (9th Cir. 2004).

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Denver ◆ Houston ◆ Los Angeles ◆ St. Louis ◆ San Francisco

does not allege that Mentor deviated from any *specific* manufacturing requirement imposed by the FDA through the IDE or PMA process, but instead relies on allegations that Mentor purportedly violated vague and generic Current Good Manufacturing Practices ("cGMPs"). *See id.* ¶ 221. As explained in Part III.C.4.a, such assertions are unacceptably vague and insufficient to survive express preemption.

The fourth cause of action for breach of implied warranty asserts that the implants were "not reasonably safe for its expected purpose, nor reasonably fit for the ordinary purpose for which it was sold and/or used and it did not meet expectations for the performance of the product." FAC ¶ 248.  Such boilerplate breach of warranty claims are not only inadequately pled, but are also routinely dismissed as expressly preempted. *See, e.g., De La Paz v. Bayer Healthcare LLC*, 159 F. Supp. 3d 1085, 1097 (N.D. Cal. 2016) (dismissing breach of implied warranty claim as preempted because a determination of whether the product lacks the most basic degree of fitness for ordinary use would bear directly on its FDA-approved safety and effectiveness).

The reasoning behind dismissal of each of Plaintiff's claims is in line with *Riegel* and its progeny.  Each claim would require "judges and juries to second-guess the balancing of benefits and risk of a specific device to their intended patient population—the central role of the FDA. . .." *Horn v. Thoratec Corp.*, 376 F.3d 163, 178 (3d Cir. 2004) (quoting the FDA's Amicus Curiae Letter Brief at 25–26). *Riegel* explicitly held that state law tort claims, including causes of action for strict liability, negligence, and breach of implied warranty, impose requirements that are different from, or in addition to, the device-specific federal requirements, and are thus preempted.  *Riegel*, 552 U.S. at 324.

The same reasoning applies here.  Plaintiff's strict liability, negligence, and warranty claims are devoid of any plausible allegations that the IDE-approved Mentor breast implants at issue in this case were not manufactured and labeled in accordance with the specifications approved by the FDA through the IDE process and later approved as safe and effective through the PMA process.  By contending that the

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

Mentor breast implants were, nevertheless, defective, Plaintiff seeks to impose requirements regarding the manufacture, marketing or labeling of the Mentor breast implants that are different from, or in addition to, what the FDA approved. Plaintiff has therefore failed to allege facts sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547. Consequently, Plaintiff's negligence (Count 1), strict liability claims (Counts 2 & 3), and breach of implied warranty (Count 4) claims fall squarely within the MDA's express preemption provision and in accordance with *Riegel* and its progeny, Plaintiff's claims should be dismissed.

### 4. Plaintiff Has Not Pled a Plausible Parallel Claim That Survives Express and Implied Preemption.

Even if Plaintiff's strict liability, negligence, and implied warranty claims escape express preemption—which they do not—they still fail to assert a viable parallel claim. In addition, Plaintiff's failure to warn and negligence per se claims are impliedly preempted as an impermissible attempt to enforce federal regulations. As noted above, "express preemption and implied preemption leave only a 'narrow gap' through which the plaintiff's claims must fit in order to survive." *Perez*, 711 F.3d at 1120. Moreover, a plaintiff "cannot simply incant the magic words '[defendant] violated FDA regulations' in order to avoid preemption." *Simmons*, 2013 WL 1207421, at *4.[8]

#### (a)  Plaintiff fails to plead a parallel manufacturing defect claim

Plaintiff's manufacturing defect claim, which relies on vague and unspecified cGMPs, does not support a parallel claim that survives express preemption. "CGMPs are guidelines that do not create a federal requirement, and a claim based on alleged failure to comply with the guidelines fails to plead violation of a federal requirement." *Pearsall v. Medtronics, Inc.*, 147 F. Supp. 3d 188, 198 (E.D.N.Y. 2015). A claim

---

[8] To properly allege a parallel claim in the IDE context, a claim should contain "an allegation that the design, manufacture, or marketing of the …device deviated in some way from the specifications approved for clinical trials by the FDA." *Burgos*, 2010 WL 4907764, at *3.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

mandating "compliance with such 'vague' standards effectively imposes "different, or additional" requirements, and is preempted by § 306." *McPhee v. DePuy Orthopedics, Inc.*, No 3:11-287, 2013 WL 5462762, at \*6–7 (W.D. Pa. Sept. 30, 2013) ; *Medtronic Leads*, 592 F. Supp. 2d at 1157–58. (noting that, since CGMPs are "simply too generic, standing alone, to serve as the basis for Plaintiff's manufacturing-defect claim[,]" to hold Medtronic liable for conduct, in "the absence of a specific requirement in the CGMPs. . . would impose requirements 'different from, or in addition to' those under federal law" (citations omitted)).

(b)   Plaintiff's alleged regulatory violations do not support a parallel claim

Plaintiff recites several alleged "violations of federal regulations" in an attempt to plead a parallel claim.  Each alleged "violation" however, is insufficient to establish a claim that escapes express and implied preemption.

(i)   *Form 483s*

Plaintiff's citation to FDA Form 483s cannot serve as the predicate for a parallel claim.  First, five of the six alleged "violations of federal law" occurred after Plaintiff's implant date and thus could not be remotely related to Plaintiff's implants.  Second, Plaintiff does not link any alleged violations to her claims. To escape implied preemption, Plaintiff "must allege that the irregularities documented in the 483s resulted in a manufacturing defect that caused her injuries." *De La Paz*, 159 F. Supp. 3d at 1094; *see also Cline v. Advanced Neuromodulation Sys., Inc.*, 17 F. Supp. 3d 1275, 1283 (N.D. Ga. 2014)  (finding that "[p]lainitff lists a number of critical observations, but fails to allege how they are linked to her claims."). Here, Plaintiff has failed to satisfy her basic pleading obligations and these allegations do nothing to establish that Mentor violated any specific manufacturing specification that caused her alleged injuries.[9]

---

[9] Plaintiff also makes additional, irrelevant allegations that are in no way causally related to her claims and cannot form the basis for a parallel claim.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

### (ii)    Changes Being Effected

Plaintiff alleges that Mentor violated federal requirements by failing to unilaterally file a "Special PMA Supplement—Changes Being Effected" ("CBE") FAC ¶ 60. However, CBE labeling pursuant to 21 C.F.R. § 814.39 is permissive, and thus cannot serve as the basis for a parallel claim. Medical device manufacturers are not required to update the labeling of their product. 21 C.F.R. § 814.39(d) permits, but does not require, interim supplemental warnings. Thus, any state law claim purporting to require an interim supplemental warning is preempted because it is "in addition to" the federal requirement. *See Houston*, 957 F. Supp. 2d at 1178 (citing *Stengel v. Medtronic, Inc.*, 704 F.3d 1224 (9th Cir. 2013) (Watford J., concurring) (finding plaintiff's failure to warn claim expressly preempted because FDA "regulations *permit* Defendants to issue such post-sale warnings, those regulations do not require such warnings"); *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 783 (D. Minn. 2009)  (finding that a failure to warn claim cannot parallel § 814.39(d) because that section merely *permits* a device manufacturer to make a temporary change to the label, whereas a successful failure-to-warn claim would *require* such a claim).

---

*First*, Plaintiff alleges Mentor somehow violated the conditions of the PMA—approved 6 years after Plaintiff's implant—because "no PMA supplement notifying the FDA of Mentor's acquisition" was filed. FAC ¶ 111. This allegation is irrelevant because Plaintiff received an IDE-approved implant, not a PMA-approved implants. And even if it were relevant, the PMA for Mentor's MemoryGel Breast Implants was filed by Mentor and the Mentor continues to hold the PMA. *See* Ex. 4 to RJN.  This federal regulation governing a change of PMA ownership is thus wholly inapplicable. Further, Plaintiff does not allege—nor could she ever plausibly allege—that any failure to notify the FDA of a change in ownership is causally related to her injuries.

*Second,* Plaintiff includes an immaterial allegation regarding a 2016 recall for an alleged "labeling mix-up", (FAC ¶ 183) which occurred *16 years* after her own implant surgery.  Such an allegation is both remote and unconnected to Plaintiff's implants and thus could not serve as a parallel claim.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

*(iii)    Adverse Event Reporting*

Plaintiff also makes the unsupported allegation that Mentor failed to report adverse events in violation of federal requirements.  Plaintiff neither alleges any actual adverse event that Mentor did not report, nor does she explain how any purported failure to report unspecified adverse events caused her injury.  "To survive a motion to dismiss on a state law failure to warn claim that is parallel to federal regulations the complaint 'must include allegations of actual adverse events that Defendants did not report.'"  *Weaver v. Ethicon*, No. 16-cv-257–GPC (BGS), 2016 WL 7098781, at *6 (S.D. Cal. Dec. 6, 2016)  (citing *Grant*, 2016 WL 4447523, at *7). This claim lacks any factual support, is insufficient under *Twombly/Iqbal* and cannot form the basis of a parallel claim.

(c)    <u>Plaintiff's failure to warn and negligence per se claims are impliedly preempted</u>.

Additionally, Plaintiff has not pled a valid parallel failure to warn or negligence per se claim because her claim is predicated exclusively on Mentor's alleged violation of federal requirements pursuant to the FDCA.  Courts in California have held that a cause of action for negligence per se based on a violation of the FDCA exists "because of federal law and [is] therefore preempted." *Anderson*, 2015 WL 2115342, at *8–9 (finding negligence per se action premised on violation of applicable federal statutes and regulations relating to medical devices was impliedly preempted under *Buckman* because they existed "because of federal law"); *Grant*, 2016 WL 444752, at *4 dismissing negligence per se claim as impliedly preempted because the statutes forming the claim were FDA-imposed regulations); *Dunbar*, 2014 WL 3056026, at *5–6 (dismissing negligence per se claim as impliedly preempted under *Buckman*).

As part of the basis for her negligence per se claim, Plaintiff alleges that Mentor breached "regulations and testing requirements imposed by the granting of the PMA by the FDA for MemoryGel Silicone Gel Breast Implants, including the requirement that follow-through studies be conducted." FAC ¶ 186. First, Plaintiff does not allege that

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

Mentor breached any regulations relating to the IDE, which governed her device at the time of implantation.   Second, Plaintiff fails to point to any *state-law claim* that parallels those alleged federal requirements. *See Wolicki-Gables v. Arrow Intern., Inc.*, 634 F.3d 1296,1300 (11th Cir. 2011) ) (to state a parallel claim that avoids preemption, a claim must be based on a state law duty that is "genuinely equivalent" to the federal requirement).   In fact, there is no state-law claim requirement that a manufacturer conduct "follow-through studies."   The adjudication of Plaintiff's claims thus relies solely on the existence of federal requirements and is impliedly preempted.   Plaintiff may not supplant the exclusive enforcement authority of the FDA by suing for alleged violations of the FDCA. Her negligence per se claim and strict liability failure to warn claim are therefore impliedly preempted and should be dismissed.[10]

Plaintiff's attempted reliance on California's Sherman Law as a parallel state law claim is also misplaced.  Like the FDCA, the Sherman Law does not provide for a right of private enforcement. *Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc.*, 922 F. Supp. 299, 317 (C.D. Cal. 1996) ); *see also Grant*, 2016 WL 4447523, at *2–3 (dismissing Sherman Law claim because it does not permit a private right of action).[11]

### 5.    Plaintiff Has Not Alleged A Causal Nexus Between the Alleged Violations and Her Injuries.

Plaintiff's attempted parallel claim also fails because she has not plausibly alleged that any violations of federal requirements caused her specific injury.   To properly plead parallel claims that survive preemption, a plaintiff must allege (1) the violation of a specific federal requirement applicable to the device; (2) the violation of an identical state-law duty; and (3) that the predicate federal violation caused his or her

---

[10] To the extent Plaintiff's strict liability failure-to-warn claim (Count 2) is based on similar alleged violations of the FDCA, that claim is impliedly preempted as well.

[11] To the extent Plaintiff asserts that her Implants were "adulterated" or "misbranded," (FAC ¶¶ 53, 59) such claims are also impliedly preempted under *Buckman. See Frere v. Medtronic*, No. EDCV 15–02338–BRO (DTBx), 2016 WL 1533524, at *7 (C.D. Cal. Apr. 6, 2016).

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

injuries." *Millman v. Medtronic*, No. 14–cv–1465, 2015 WL 778779, at *4 n.2 (D.N.J. Feb. 24, 2015).

Here, Plaintiff fails to draw the necessary causal link between the alleged federal violations and her injuries.  Plaintiff has alleged no facts suggesting how the progress of Mentor's post-approval studies caused her injuries; "she merely alleges the conclusion of causation itself." *Frere*, No. EDCV 15–02338–BRO (DTBx), 2016 WL 1533524, at *6.  She makes the speculative and unsupported assertion that "of the patients who were accounted for, significant numbers reported systemic ailments *which can only be attributed to gel bleed*." FAC ¶ 100 (emphasis added). She has articulated no facts, however, to support her bald conclusion that additional information from patients in post-approval studies would reveal an issue with "gel bleed" or would result in the FDA requiring different labeling. Further, as Plaintiff herself highlights by referencing the FDA's website regarding Mentor's post-approval studies, the FDA is already aware of the status of each post-approval study, but has not required Mentor to take any action or alter the warnings already in place.

### 6.   Numerous Courts Have Held State Law Claims Related to Breast Implants Are Preempted

Numerous courts – both before and after *Riegel* – have for years held that state law claims related to IDE- or PMA-approved breast implants are preempted.  *See, e.g.*, *Clore v. Mentor Worldwide, LLC*, No. 4:17-cv-00003-CVE-TLW (N.D. Okla. Apr. 7, 2017) (granting Mentor's motion to dismiss plaintiff's product liability claims regarding saline breast implant on the basis of preemption) (order attached as Exhibit A to Benedict Decl. ¶ 3) *Malonzo v. Mentor Worldwide, LLC*, No. C 14–01144 JSW, 2014 WL 2212235 (N.D. Cal. May 28, 2014) (dismissing product liability claims against Mentor regarding saline breast implants as expressly preempted); *Ford v. Mentor Worldwide, LLC,* No. 2:13-cv-06317 (E.D. La. Dec. 17, 2013) (granting Mentor's motion to dismiss all of plaintiff's product liability claims regarding saline breast implants as preempted under *Riegel*) (order attached as Exhibit B to Benedict Decl. ¶

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

4); *Harris v. Mentor Worldwide LLC*, No. 12-cv-916 (E.D. Cal. Aug. 21, 2012) (following *Riegel* and dismissing plaintiff's product liability claims regarding saline breast implants against Mentor as preempted) (minute order attached as Exhibit C to Benedict Decl. ¶ 5); *Couvillier v. Allergan Inc.*, No. 10–1383, 2011 WL 8879258, at *1–2 (W.D. La. Jan. 20, 2011) (following *Riegel* and dismissing plaintiff's product liability claims regarding silicone gel-filled breast implants as preempted). *Williams v. Allergan USA, Inc.*, No. CV–09–1160–PHX–GMS, 2009 WL 3294873, at *2–3 (D. Ariz. Oct. 14, 2009) (following *Riegel* and granting breast implant manufacturer's motion for summary judgment because plaintiff's product liability and negligence claims related to a ruptured silicone implant were preempted); *Dorsey v. Allergan, Inc.*, No. 3:08-0731, 2009 WL 703290, at *1–6 (M.D. Tenn. Mar. 11, 2009) (following *Riegel* and granting breast implant manufacturer's motion for summary judgment on preemption in case involving silicone gel breast implants approved through IDE process); *Herbert v. Mentor*, No. 04–413 (MLC), 2007 WL 2893387, at *3–4 (D.N.J. Sept. 28, 2007) (granting Mentor's motion for summary judgment on preemption in case involving saline breast implants); *Cottengim v. Mentor Corp.*, No. 05–161–DLB, 2007 WL 2782885, at *2–5 (E.D. Ky. Sept. 24, 2007) (granting Mentor's motion for summary judgment on preemption in case involving saline breast implants); *Alfred v. Mentor Corp.*, No. 05–483–C, 2007 WL 708631, at *2–7 (W.D. Ky. Mar. 5, 2007) (granting Mentor's motion for summary judgment on preemption and other grounds in case involving saline breast implants); *Haddock v. Mentor Tex.*, No. Civ.A. 303CV2311B, 2005 WL 3542563, at *4 (N.D. Tex. Mar. 25, 2005) (granting Mentor's motion for summary judgment on preemption in case involving saline breast implants).

### C.   Plaintiff Minh Nguyen's Derivative Loss of Consortium Claim Fails.

Because Plaintiff Rexina Mize's claims fail, her spouse's derivative loss of consortium claim (Count 5) fails.  "One spouse cannot have a loss of consortium claim without a prior disabling injury to the other spouse." *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1038–39 (9th Cir. 2008); *see also Jager v.*

*Davol Inc.*, No. EDCV 16–1424 JGB (KKx), 2017 WL 696081, at *7 (C.D. Cal. Feb. 9, 2017).

## IV.   **CONCLUSION**

Based on the above, Mentor respectfully requests that the Court enter an order granting Mentor's Rule 12(b)(6) Motion to Dismiss and dismiss Plaintiffs' action, with prejudice, in its entirety.

DATED:  May 16, 2017                    TUCKER ELLIS LLP


                                        By: */s/Mollie F. Benedict*
                                             Mollie F. Benedict
                                             Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of May, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing.


/s/ *Mollie F. Benedict*
Mollie F. Benedict